UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00060-FDW

| | |
|---|---|
| GREGORY S. DENNIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Gregory S. Dennis's Motion for Summary Judgment (Doc. No. 6) filed July 9, 2018, Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 9) filed on September 6, 2018, and Plaintiff's Response (Doc. No. 13) filed on October 10, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment; DENIES Defendant's Motion for Summary Judgment; and REVERSES the Commissioner's decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g)[1] for proceedings consistent with this Order.

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II on March 31, 2014, alleging disability beginning October 1, 2007. (Tr. 22). After his application was denied initially and upon reconsideration (Tr. 278, 286, 287), Plaintiff requested a hearing (Tr. 295). A hearing was held on November 16, 2016 (Tr. 22, 41, 342). On March 29, 2017, the ALJ issued an unfavorable decision. (Tr. 19). Plaintiff's request for review by the Appeals Council was denied on December 4, 2017. (Tr. 1).

The ALJ established that Plaintiff met the insured status requirement through June 30, 2013 and had not engaged in substantial gainful activity since the alleged onset date of October 1, 2007. (Tr. 24). Then, the ALJ found Plaintiff had severe impairments of learning disorder, attention deficit hyperactivity disorder, narcissistic personality traits, history of substance abuse, and variously diagnosed mood disorder (depressive disorder/mood disorder/schizoaffective disorder). (Tr. 24). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 25). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: he is capable of performing simple routine, repetitive tasks. He should not perform fast-paced or production rate work. He should have few if any workplace changes. He can have occasional interaction with the general public.

(Tr. 26). The vocational expert ("VE") testified that an individual with Plaintiff's RFC could not perform his past relevant work as a loan officer, DOT. No. 186.267-018; security guard, DOT. No. 372.667-034; general laborer, DOT. No. 519.686-010; and telephone sales person, DOT. No. 299.357-014. (Tr. 33). In response to a hypothetical that factored in Plaintiff's age, education,

work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy and listed jobs, which exists in significant numbers in the national economy. (Tr. 33-34). Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act. (Tr. 34). Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here

conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

4

> WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Plaintiff claims that the ALJ erred in the following ways: (1) failure to ask the VE a complete hypothetical that included an accurate accounting of Plaintiff's limitations; (2) failure to properly consider opinion evidence of Plaintiff and treating medical providers; and (3)

5

failure to account for step two and three findings in the ALJ's mental RFC assessment. (Doc. No. 7). The Court agrees that, on the record before the Court, remand is necessary.

In step 3 of an ALJ's analysis, the functional limitations of mental impairments are assessed within four broad categories: activities in daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C). Social functioning refers to the ability "to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(2). A limitation is assessed on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If a claimant's limitations in these four broad categories do not meet or equal those listed in the paragraph B or C listings, the ALJ will determine the claimant's RFC. 20 C.F.R. § 404.1520(a).

When determining a claimant's RFC, an ALJ reviews all the relevant evidence of record, including medical determinable impairments that are not deemed severe, 20 C.F.R. § 404.1545 (a)(1)-(2), and analyzes the impact of the claimant's impairments on the claimant's work activity on a regular and continuing basis, 20 C.F.R. § 404.1545 (a)(4), (b)-(e); see also SSR 96-8p; Lewis, 858 F.3d at 862 (citing Mascio, 780 F.3d at 636). "[T]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Monroe, 826 F.3d at 189 (citations and internal quotation marks omitted); SSR 96-8p. However, a narrative discussion of functions that are irrelevant or uncontested is not necessary. See Mascio, 780 F.3d at 636 (holding that remand would be futile for the lack of a function-by-function analysis of irrelevant or uncontested functions).

In addition to addressing the ALJ's responsibility to conduct a function-by-function analysis, the Fourth Circuit in Mascio held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a claimant to performing only "simple, routine, tasks." 780 F.3d at 638. Courts have further clarified that, "[p]ursuant to Mascio, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." Pulliam v. Colvin, No. 1:13-cv-176, 2016 WL 843307, at *6 (M.D.N.C. March 1, 2016) (citing Talmo v. Comm'r, Soc. Sec., No. ELH–14–2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015)).

Some district courts within the Fourth Circuit, including this Court, have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those moderate limitations in social functioning or justify the omissions of such restrictions. See, e.g., Russell v. Colvin, No. 1:14-cv-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 16, 2015) ("Although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning."); Ashcraft v. Colvin, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is

7

unexplained in the analysis surrounding the ALJ's RFC determination, remand is required."). While the ALJ is not required to include a corresponding restriction to address interactions with each category of individuals—coworkers, supervisors, and the public—in her RFC determination, see Smith v. Berryhill, 2018 WL 6249692, at *8 (D. Md. Nov. 29, 2018), the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts, see Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted). An ALJ must do so by providing a narrative explanation with citations to evidence to support it. Mascio, 780 F.3d at 636 (citation and internal quotation marks omitted). In other words, the ALJ must build an accurate and logical bridge from that evidence to her conclusion. Monroe, 826 F.3d at 189.

Here, the ALJ found Plaintiff has a "moderate limitation" with "interacting with others." (Tr. 25). This finding necessitates the ALJ include either a corresponding limitation in the RFC assessment or an explanation as to why one was not necessary. See Russell v. Colvin, No. 1:14-cv-00203, 2015 WL 3766228, at *4 (W.D.N.C. June 16, 2015). In the instant case, the ALJ included limitations to "occasional public contact" but nothing specifically about interactions with coworkers and supervisors. (Tr. 26). In her decision, the ALJ explained that she considered that,

> [Plaintiff] reported he had a small group of friends with whom he interacted occasionally (citing Exhibit 1F/22). During vocational testing in 2008, [Plaintiff's] history of occasional troubles with interpersonal interactions on past jobs was noted, but none were observed during the evaluation. It concluded the [Plaintiff] needed an environment where he needed guidance, but was allowed to work independently (citing Exhibit 14F). The [Plaintiff] does not have a criminal history involving inappropriate interactions with others. Dr. Gay commented that at the conclusion of his inpatient treatment in March 2013, they saw 'a dramatic improvement in the patient's symptoms;' [Plaintiff] was calm, cooperative, and pleasant, interacting appropriately with staff and peers and having much improved grooming and hygiene. [Plaintiff's] underlying mild grandiosity 'may have still been present at the time of discharge, but certainly it was much improved' (citing Exhibit 3F/24). Dr. Almeida regularly commented that [Plaintiff] was always polite with her (citing Exhibit 3F). These comments show that when [Plaintiff] is compliant with is medication regimen and not abusing substances, he interacts better.

8

(Tr. 25). While the Court recognizes that it is not necessary for an ALJ to address interactions with each category of individuals in her RFC determination, see Smith, 2018 WL 6249692 at *8, the ALJ's decision fails to explain why the requirement that Plaintiff be in an environment where he can receive guidance but work independently does not translate into a limitation on interacting with coworkers or supervisors. As it is currently articulated, the ALJ's decision does not resolve this potentially conflicting evidence, and it is not the Court's role to do so. Hays, 907 F.2d, at 1456 (citations omitted).

The Commissioner argues that the ALJ included a limitation in the RFC that directly accounted for her step-three finding, and that Plaintiff has failed to establish that further limitation in the RFC was warranted. (Doc. No. 10 at 16). This Court disagrees. Plaintiff's briefs clearly point to the discrepancies between the evidence and the RFC. (Doc. No. 7 at 20-21; Doc. No. 13 at 4). Furthermore, as acknowledged by the Commissioner, the ALJ specifically referenced evidence that Plaintiff needed an environment where he had guidance but would be allowed to work independently. (Tr. 25). However, these limitations are not accounted for in the RFC, and the ALJ's narrative discussion does not explain their omission. Without further explanation, the Court is "left to guess about how the ALJ arrived at [her] conclusion." Mascio, 780 F.3d at 637.

Therefore, the Court agrees with Plaintiff that the decision must be remanded to specifically address the question of whether Plaintiff needs limitations in his interactions with supervisors and coworkers or provide an explanation for why that is not necessary, including citing to specific evidence in the record. As the Court has determined that remand is required, the Court declines to consider any alleged errors not addressed herein.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is GRANTED in part and DENIED in part; the Commissioner's Motion (Doc. No. 9) is DENIED; and the ALJ's determination is REVERSED[2] and REMANDED to the Commissioner for further proceedings consistent with this ORDER.

IT IS SO ORDERED.

Signed: January 22, 2019

Frank D. Whitney
Chief United States District Judge

---

[2] In reversing the Commissioner's decision, the Court expresses no opinion on the merits of Plaintiff's claim for disability. The Court expressly provides that an order of "reversal" here does not mandate a finding of disability on remand. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)).